# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KEVIN RANDALL HUNT**,

      Petitioner,

v.                                        Case No. 8:20-cv-1530-WFJ-TGW

**SECRETARY, DEPTARTMENT
OF CORRECTIONS**,

      Respondent.

_____/

## ORDER

Before the Court is Kevin Randall Hunt's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). Secretary, Florida Department of Corrections ("Respondent") has responded in opposition (Dkt. 12), and Petitioner has replied (Dkt. 15). Upon careful consideration, the Court finds an evidentiary hearing unnecessary and denies Petitioner any relief.

## BACKGROUND

On May 20, 2016, Petitioner pled no contest to various state misdemeanor and felony theft crimes charged against him in Polk County, Florida case numbers 15-CF-2837 and 15-CF-3600. Dkt. 12-2 at 18. In exchange, he received five years' probation. *Id.* at 47. Petitioner was nevertheless arrested later the same day, *id.* at 98, and subsequently charged with sixteen new counts in case number 16-CF-4077. *Id.*

at 64. The Florida Department of Corrections filed an affidavit of violation of probation in relation to 15-CF-2837 and 15-CF-3600 shortly thereafter. *Id.* at 72.

On August 4, 2016, Petitioner, through counsel Richard B. Parker, filed a motion to suppress evidence from his May 20, 2016, arrest. *Id.* at 74. Petitioner argued that the evidence was obtained pursuant to an illegal seizure because he was arrested based on the mere suspicion that his driver's license was suspended. *Id.* at 75. After a suppression hearing involving the testimony of Deputy Benjamin Brown (the arresting officer), Petitioner, Petitioner's son, and Petitioner's sister-in-law, the state court denied Petitioner's motion. *Id.* at 80, 132.

On April 10, 2017, while presumably still in custody, Petitioner was charged with two additional counts in case number 17-CF-2610. *Id.* at 142. Most of these various charges (in all four of Petitioner's cases) were petit and grand theft charges, as well as counterfeiting and one count of obstruction. There was also one felony methamphetamine sales count and one firearms count. Prior to this group of crimes, Petitioner had six similar convictions.[1]

On March 5, 2018, Petitioner, now represented by counsel Cynthia Lakeman, admitted to violating conditions of his probation (as to 15-CF-2837 and 15-CF-3600) and entered into a plea agreement concerning his other two cases (16-CF-4077 and

---

[1]   *See* Florida Department of Corrections, Corrections Offender Network, *https://fdc.myflorida.com/offenderSearch/detail.aspx?Page=Detail&DCNumber=H09787&Type Search=AI* (last visited July 24, 2023).

17-CF-2610). *Id.* at 147, 168–172. Petitioner received a total of ten years' imprisonment. *Id.* at 181–234. On April 3, 2018, Petitioner filed a motion to withdraw his plea on the basis of ineffective assistance of counsel, *id.* at 238, but the state court denied it, stating that Petitioner "is not required to first withdraw from his plea to seek postconviction relief." *Id.* at 241.

On August 3, 2018, Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. *Id.* at 243. Petitioner raised three grounds: (I) Mr. Parker provided ineffective assistance of counsel by failing to adequately advise Petitioner regarding a favorable plea bargain; (II) Mr. Parker provided ineffective assistance of counsel by failing to properly impeach Deputy Brown during the August 4, 2016, suppression hearing; and (III) Petitioner's March 5, 2018, plea "was involuntary because it was the result of psychological intimidation, duress, fear[,] and coercion inflicted upon [Petitioner] by [Ms. Lakeman]." *Id.* at 244–55. On August 24, 2018, the state postconviction court denied Grounds I and II, and dismissed Ground III without prejudice. *Id.* at 284–86. Petitioner subsequently submitted an amended version of Ground III—now asserting that Mr. Parker had provided ineffective assistance of counsel by failing to investigate and prepare a defense to the charges against Petitioner—but the postconviction court denied any relief. *Id.* at 288, 296. The state appellate court *per curiam* affirmed on August 2, 2019. *Id.* at 330.

On July 1, 2020, Petitioner timely filed the instant Petition for Writ of Habeas Corpus. Dkt. 1. Petitioner asserts four grounds for relief: (I) Mr. Parker provided ineffective assistance of counsel by misadvising Petitioner concerning a favorable plea deal; (II) Mr. Parker provided ineffective assistance of counsel by failing to properly impeach Deputy Brown during the August 4, 2016, suppression hearing; (III) Mr. Parker provided ineffective assistance of counsel by failing to investigate, depose, and call two material witnesses during the August 4, 2016, suppression hearing; and (IV) Ms. Lakeman provided ineffective assistance of counsel for representing Petitioner at the March 5, 2018, hearing "after withdrawing as counsel and failing to request a *Nelson*[2] hearing before resuming her representation of [Petitioner]." *Id.* at 10–24. Petitioner requests an evidentiary hearing on these matters. Respondent maintains that Petitioner is entitled to no relief. Dkt. 12.

## LEGAL STANDARDS

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). The AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction on a claim "that was adjudicated on the merits in the State court proceedings" unless the

---

[2] *See Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973).

state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

A state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). Indeed, "even if reasonable minds reviewing the record might disagree about the [fact] finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal quotation omitted). Further, this standard applies even

if the state court does not provide the reasoning behind its decision because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.,* 278 F.3d 1245, 1254 (11th Cir. 2002). Only if this Court determines that the state court's adjudication of Petitioner's claim was unreasonable under § 2254(d) must a *de novo* review of the record be undertaken. *See McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1266 (11th Cir. 2009).

## DISCUSSION

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A petitioner claiming ineffective assistance of counsel carries the burden of establishing both prongs. *Strickland*, 466 U.S. at 687.

To establish deficient assistance under *Strickland*, a petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. The test is not "what the best lawyers" or "what most good lawyers would have done." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992). Rather, the question is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Id.*

To establish resulting prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

Notwithstanding the highly deferential standard posed by *Strickland*, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). In the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland's* deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

"[I]t is a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding . . . [I]t is rarer still for merit to be found in a claim that challenges a

strategic decision of counsel." *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (internal citations omitted). A strategic decision by counsel is only subject to federal habeas review when it was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

## I.   Ground I

In Ground I, Petitioner argues that Mr. Parker provided ineffective assistance of counsel by misadvising Petitioner during the pre-trial period, resulting in "a lost favorable plea deal of 1–3 years in prison." Dkt. 1 at 10. This argument was raised in Petitioner's motion for postconviction relief, Dkt. 12-2 at 244, and summarily denied by the state postconviction court. *Id.* at 284–85. The state appellate court *per curiam* affirmed. *Id.* at 330.

In ruling on Ground I, the postconviction court found the following:

[Petitioner] alleges that attorney Richard Parker conveyed to him that he could obtain an offer of one to three years. Through this claim it is clear that Defendant was aware there was not a firm offer extended by the State. Nonetheless, Defendant then alleges Mr. Parker provided him with two options: 1) accept the 1–3 year offer; or 2) proceed with a motion to suppress, for which Mr. Parker allegedly told the Defendant there were "excellent grounds" upon which such a motion could be granted. The Defendant chose the later option, and after the motion to suppress was denied, was no longer able to bargain for a plea of 1–3 years.

[Petitioner's] claim suffers from several issues. First, [Petitioner] acknowledges the 1–3 year offer was never a firm offer, but was rather discussions with his attorney regarding possible plea negotiations. Next, [Petitioner] also alleges he understood there were two options available to him, for which he chose to proceed with the motion to suppress. This makes it quite clear by opt[ing] to proceed with the motion to suppress, [Petitioner] would not be able to later obtain an offer of 1–3 years. Finally, [Petitioner] never even alleges at the time [Petitioner] discussed the plea negotiations with Mr. Parker, Mr. Parker could have been aware that the motion to suppress would not prevail. For these reasons, [Ground I] is DENIED.

*Id.* at 284–85.

This was not an unreasonable application of *Strickland*. As noted above, a strategic decision by counsel is subject to federal habeas review only when it was so "patently unreasonable that no competent attorney would have chosen it." *Wainwright*, 709 F.2d at 1445. In the AEDPA context, moreover, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable[.]" *Mirzayance*, 556 U.S. at 123 (citation and internal quotation marks omitted). Here, the postconviction court reasonably found Petitioner's challenge to the strategic decision-making of Mr. Parker (as it related to his assessment of Petitioner's legal options) to be factually and legally meritless. Petitioner essentially asserts that he received ineffective counsel because Mr. Parker (1) failed to clarify that the two options presented were mutually exclusive and (2) erroneously advised that filing a motion to suppress would be more advantageous than pursuing a plea

deal. The factual problems with this claim, as noted by the postconviction court, are that Petitioner himself makes clear that Mr. Parker presented the aforementioned options in the context of an 'either or' proposition and never stated that a firm plea deal was extended by the State.[3] The legal issue is that Petitioner himself demonstrates the existence of a reasonable argument that could support a motion for suppression.[4] Given this, the postconviction court's ruling was neither contrary to the record, nor a misapplication of federal law.

The Court also notes that Petitioner's arguments concerning the unreasonableness of Mr. Parker's strategy in Ground I are contradicted by Petitioner's assertions in Grounds II and III. There, Petitioner maintains that Mr. Parker was ineffective because he failed to properly impeach Deputy Brown and call certain witnesses at the suppression hearing. Dkt. 1 at 15, 18. Petitioner contends that, had Mr. Parker simply done either of these two things, he would have prevailed on his suppression motion. *Id.* at 16, 21. In effect, Petitioner concedes, where favorable to him, that Mr. Parker's suppression motion strategy was reasonable. And

---

[3] *See* Dkt. 12-2 at 244 (Petitioner stating that "[e]arly in the case and prior to the filing of a motion to suppress, defense counsel, Richard B. Parker . . . visited [Petitioner] in the jail and told him that there were two options"); s*ee id.* at 245 (Petitioner acknowledging that he knew "the plea agreement was not in writing" but stating that Mr. Parker nevertheless "conveyed to him that the offer was in fact 1–3 years").

[4] *See* Dkt. 12-2 at 247 (Petitioner stating that "[t]he sum of Parker's theory [for suppression] was that Deputy Brown lacked probable cause to seize and arrest [Petitioner] because he only found out that [Petitioner's] license was suspended after the encounter . . . . Parker was proceeding under the 'stale knowledge' theory").

this means that "some reasonable lawyer . . . could have acted, in the circumstances, as [Mr. Parker] acted[.]" *White*, 972 F.2d at 1220. Petitioner is entitled to no relief on Ground I.

## II.    Ground II

Ground II argues that Mr. Parker provided ineffective assistance of counsel by failing to properly impeach Deputy Brown at the suppression hearing, resulting in the denial of Petitioner's motion to suppress. Dkt. 1 at 15–17. Petitioner raised this claim in his motion for postconviction relief, Dkt. 12-2 at 248, but it was summarily denied by the state postconviction court. *Id.* at 285. The state appellate court *per curiam* affirmed. *Id.* at 330.

In considering this claim, the postconviction court found the following:

> [Petitioner's] second claim alleges trial counsel Richard Parker was ineffective for failing to impeach Deputy Benjamin Brown during the suppression hearing. [Petitioner] claims trial counsel should have introduced DAVID access records to show Deputy Brown did not access [Petitioner's] information between April of 2016, and May of 2016. [Petitioner] then acknowledges this is how the Deputy testified during the suppression hearing. As such, these records would not have impeached Deputy Brown's testimony. [Ground II] is DENIED.

*Id.* at 285.

This ruling was neither contrary to the record, nor a misapplication of *Strickland*. To begin with, as the postconviction court clearly explained, the DAVID records Petitioner alludes to would not have impeached the testimony Deputy Brown gave during the suppression hearing. During cross-examination, Deputy Brown

agreed with Mr. Parker that, between April 6, 2016, and May 20, 2016, he did not run Petitioner's "name through the DAVID database to determine if his license had been reinstated[.]" Dkt. 12-2 at 100–01. This is precisely what Petitioner claims the DAVID records would have demonstrated. Mr. Parker's failure to introduce said records was therefore inconsequential.

Mr. Parker's failure to introduce the deposition testimony of Deputy Brown, which Petitioner now complains of, was similarly inconsequential. Petitioner alleges that during his initial deposition, Deputy Brown "swore that he ran [Petitioner's] license through the DAVID database more than once since the first contact with Petitioner back on April 6, 2016." Dkt. 1 at 15–16. Petitioner argues that, had Mr. Parker exposed this inconsistency (and thereby impeached Deputy Brown), it would have "undermined [Deputy] Brown's credibility with the judge sufficient enough to make the judge grant the motion to suppress." This is not the case. While the supposedly inconsistent testimony might have impacted the state court's overall credibility determination, it would not have altered the court's ultimate ruling. The state court ruled that Deputy Brown had reasonable suspicion to stop Petitioner despite the fact that "Deputy Brown had not checked the status on [Petitioner's] license" for forty-four days because (1) "[there] is clearly no bright line rule establishing when information from prior contact of a suspended license becomes stale", and (2) prior case-law suggested that, "upon the totality of the circumstances

in [Petitioner's] case[,]" Deputy Brown's knowledge was not stale. Dkt. 12-2 at 132–34. Inconsistent testimony could not have altered this finding where all the parties agreed that the forty-four day timeframe was established by DAVID records. Petitioner has therefore failed to establish "a reasonable probability that, but for [Mr. Parker's actions], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Petitioner is entitled to no relief on Ground II. *See Maharaj*, 432 F.3d at 1319 (finding that an ineffective assistance of counsel claim fails where the petitioner fails to establish either of the *Strickland* prongs).

### III.   Ground III

In Ground III, Petitioner argues that Mr. Parker provided ineffective assistance of counsel by "failing to investigate, depose[,] and call two available [and] material eyewitnesses" during the suppression hearing. Dkt. 1 at 18. This argument was raised in Petitioner's amended motion for postconviction relief, Dkt. 12-2 at 288, and summarily denied by the state postconviction court. *Id.* at 296. The state appellate court *per curiam* affirmed. *Id.* at 330.

In ruling on Ground III, the postconviction court found the following:

> [Petitioner] now claims trial counsel failed to call two witnesses, Hope Gatlin (his ex-girlfriend), and Robert Ebi (his ex-girlfriend's current boyfriend). [Petitioner's] motion properly cites to *Nelson v. State*, 875 So. 2d 579 (Fla. 2004), for what a facially sufficient claim alleging ineffective assistance of counsel for failing to call a witness must allege to show prejudice. Despite this, the claim never asserts these witnesses were actually available to testify at the hearing on the motion to suppress. Nonetheless, the Defendant's claim still fails.

13

[Petitioner] alleges these witnesses would have testified that they observed [him] from a distance, standing in the parking lot without his helmet on. [Petitioner's] motorcycle was not running. They also would have testified that the firearm thrown by [Petitioner] into the truck, was actually in the truck the entire time. They also would have stated they observed [Petitioner] speak with Deputy Brown, and after responding with a few words [Petitioner] turned to walk away. They then saw Deputy Brown try to grab [Petitioner's] arm, and threw him to the ground.

While this purported testimony does in fact contradict some of what was given by Deputy Brown, it clearly would not have made a difference to the Court's ruling on the Motion to Suppress. [Petitioner's] motion appears to allege this additional testimony, along with his testimony, his son's, and that of his sister-in-law, would have been sufficient for the Court to find their testimony more credible than that of Deputy Brown's. However, the Court noted in the Order Denying Defendant's Motion to Suppress that the testimony of his son and sister-in-law added nothing, as they acknowledged they arrived on scene after [Petitioner] had already been arrested. The testimony of these new purported witnesses would appear to be cumulative with one another, and like all of the defense witnesses, are not disinterested parties. More importantly, the purported testimony of these new witnesses would have contradicted [Petitioner's] own testimony. [Petitioner's] testimony at the hearing on the motion to suppress is that these witnesses arrived as Deputy Brown was speaking with [him], while [Petitioner] alleges these witnesses would have provided testimony regarding several observations made prior to Deputy Brown's arrival.

Dispositive of this claim however, is that [Petitioner] alleges these witnesses would have shown [Petitioner] was merely walking away from a consensual encounter, and not a stop founded on reasonable suspicion. These witnesses who would have admitted they were not present with [Petitioner] at the time Deputy Brown first made contact with [Petitioner], would have no basis to provide testimony reaching such a legal conclusion – just as the testimony of [Petitioner's] son and sister-in-law was not relevant to this inquiry. As this purported

> testimony would not affect the Court's conclusion that Deputy Brown had reasonable suspicion for the stop, the claim is DENIED.

*Id.* at 298–99 (cleaned up) (citations omitted).

The Court cannot deem this unreasonable; as the postconviction court explained, there is little to no chance that the introduction of testimony from Ms. Gatlin and Mr. Ebi would have changed the outcome of Petitioner's suppression hearing. Even on Petitioner's narrative, Ms. Gatlin and Mr. Ebi arrived after Deputy Brown made initial contact with Petitioner. *See id.* at 117 (Petitioner testifying that "[Deputy Brown] pulled up in front of me, he gets out, he walks up to me. He says, what are you doing here? I said, and about that time my ex-girlfriend and her boyfriend pulled into the bar"). Ms. Gatlin and Mr. Edi would therefore have no factual basis upon which to claim that Petitioner was merely involved in a consensual encounter with Deputy Brown when they arrived. It follows that their testimony could not have credibly refuted that of Deputy Brown's. This is not to mention, moreover, that both Ms. Gatlin and Mr. Edi are interested parties who never actually testified—what they would or would not have said is wholly speculative. This being the case, Petitioner cannot demonstrate prejudice as to Ground III. He is entitled to no relief.[5]

---

[5] Petitioner appears to suggest that he was nevertheless prejudiced because the testimony of Ms. Gatlin and Mr. Ebi "was material as to whether or not [he] was armed during" his arrest and whether "he was [or was] not riding a motorcycle when Deputy Brown" arrived. Dkt. 1 at 20. As an initial matter, whether the gun recovered during Petitioner's arrest was actually Petitioner's would have been an issue for trial. It would not have been resolved in any sense of the word on a

## IV.    Ground IV

Finally, in Ground IV, Petitioner argues that Ms. Lakeman was ineffective for representing him at the March 5, 2018, plea hearing after withdrawing as counsel and then failing to request a *Nelson* hearing prior to resuming her representation. Dkt. 1 at 22. A somewhat similar claim was made in Petitioner's original motion for postconviction relief, Dkt. 12-2 at 253, and the postconviction court dismissed it without prejudice as facially insufficient. *Id.* at 285.[6] Petitioner failed to raise the claim again in his amended motion for postconviction relief. Respondent maintains that this failure amounts to a procedural default of Ground IV.

---

motion to suppress unless the motion was granted. And, for the reasons explained above, the motion would not have been granted regardless of whether Ms. Gatlin and Mr. Ebi provided testimony about what they witnessed after arriving—this includes hypothetical testimony about the gun not being Petitioner's. Second, for the same reasons that Ms. Gatlin and Mr. Edi could not credibly speak to the nature of Deputy Brown's stop, they could not speak to whether Deputy Brown witnessed Petitioner on his motorcycle. They arrived after him. Petitioner suffered no prejudice in relation to Mr. Parker's decision not to present Ms. Gatlin and Mr. Ebi's testimony.
[6] In dismissing this claim, the postconviction court found the following:

> [Petitioner's] final claim alleges his plea was involuntarily entered as a result of psychological intimidation, duress, fear, pressure, and coercion, all inflicted upon him by his counsel. As to this claim, [Petitioner] cites to his dissatisfaction with trial counsel for failing to investigate and prepare for trial, matters which he raised before the Court on the date of sentencing. These allegations are vague and conclusory. [Petitioner] has failed to state how trial counsel failed to investigate. Other than this vague allegation [Petitioner] has not pled any other forms of intimidation, duress, fear, pressure, or coercion. As the claim is facially insufficient, [Petitioner] shall be provided with an opportunity to re-file a facially sufficient amended claim[.]

Dkt. 12-2 at 285.

The Court agrees with Respondent. Before a federal court can grant habeas relief, a petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1)(A), (C).  This is because a "state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson v.  Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). To exhaust a claim, a petitioner merely must present the state court with both the particular legal basis for relief and the facts supporting the claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'").

Here, Petitioner failed to exhaust Ground IV by neglecting to raise it in his amended motion for postconviction relief. After the state postconviction court dismissed Petitioner's averments against Ms. Lakeman without prejudice and granted Petitioner leave to amend, Petitioner never raised a claim against Ms. Lakeman again. He instead brought an additional claim against Mr. Parker. Dkt. 12-

2 at 288. This effectively deprived the postconviction court of any opportunity to consider the facts underlying Petitioner's current claim against Ms. Lakeman. Petitioner's claim is therefore defaulted; as, Petitioner can no longer bring Ground IV before the postconviction court.

Petitioner, anticipating this issue, argues that he is entitled to review under *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). *Martinez* holds that, "when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances." 556 U.S. 1 at 14. The first circumstance (and the only one applicable here) "is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial." *Id.* A prisoner seeking to overcome a procedural default on *Martinez* grounds, however, "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*

Petitioner cannot demonstrate that Ground IV has any merit. Contrary to Petitioner's factual assertions, Ms. Lakeman never withdrew as his trial counsel. The March 5, 2018, plea hearing began with Ms. Lakeman[7] and the State approaching

---

[7] According to Petitioner, Ms. Lakeman was appointed to represent Petitioner after Petitioner fired Mr. Parker (Petitioner's first appointed counsel) and Guillermo Gomez (private counsel) withdrew. Dkt. 12-2 at 245.

the court to discuss a plea deal offer. Dkt. 12-2 at 148. Ms. Lakeman expressed that Petitioner would be willing to accept the State's offer to resolve all of his cases if the court was willing to give him the bottom of the guidelines—approximately five years. *Id.* The State remained steadfast in its ten year position. *Id.* at 149. Ultimately, the court made no promises and expressed that, if the plea was accepted, Petitioner would be subjecting himself to something between the bottom of the guidelines and the ten years offered by the State. *Id.* at 152. The hearing was then paused to allow Ms. Lakeman to speak with Petitioner.

When Petitioner's case was recalled, Ms. Lakeman indicated that Petitioner expressed his desire to hire other counsel. *Id.* at 152. Petitioner stated the following:

> Your Honor, if I may, I would like to place certain facts on the record. At this time, I have been appointed Cynthia Lakeman to represent me in my VOP and criminal matters. Since, August 4th, 2017, when I received my first and only letter from Ms. Lakeman, stating she was appointed to represent me, I had several court appearances to which she was able to attend one. The other court dates were continued without Ms. Lakeman being present. During my one and only attorney visit, I presented Ms. Lakeman some issues to investigate in defense of my prosecution against me. And I have yet to hear back from her. Today, I am here with Ms. Lakeman, we still haven't spoken about and or discussed any research or investigative avenues of defense today. To my understanding, I am here for a probation evidentiary hearing. I believe I am entitled to an effective counsel as guaranteed by the U.S. Constitution. To proceed in this hearing, where adverse results could be prison time, would be a miscarriage of justice. And I plead the assistant of the court, to remedy the situation.

*Id.* at 154–55 (cleaned up).

This came as a surprise to Ms. Lakeman. Indeed, after the court expressed its intention to conduct a *Nelson* hearing and stated that Petitioner is "obviously trying to discharge you as . . . court appointed attorney[,]" Ms. Lakeman admitted that "all of this is news to me." *Id.* at 157. Ms. Lakeman went on to state that, "at this point[,] I have concerns because [Petitioner] is raising allegations against me that I do not agree with and I don't know how far you want me to go before — I — I don't know that there is not a conflict now because of what he said." *Id.* The court subsequently decided to continue the hearing in order to give Petitioner a chance to hire private counsel. *Id.* at 158.

It was at this point that the State put on the record it was "not making any future offers and revoking all offers at this point in this case." *Id.* "Before [going] down that road," the court asked, "what is [Petitioner's] maximum exposure for all of this?" *Id.* at 159. The court then explained that,

> if everything [is run] consecutively [and] you're found guilty of everything, the maximum consecutive is 115 years, concurrent 30 years, all right. Now, the State is saying, and I don't control — The Court doesn't control what offers the State makes. The State is saying, if we leave here today, it's not making anymore offers. Everything is off the table and what they are saying is, and again I don't control what the States says is, if it — they are not going to put anything back on the table, okay. You understand that? That's a yes or a no. If you don't understand it, say you don't. If you do understand it, say yes.

*Id.* at 160 (cleaned up). The court subsequently paused Petitioner's hearing once more to allow Petitioner to consider things.

After the break, Petitioner was still uncertain about accepting or rejecting the State's offer. Petitioner then requested another moment "to talk to my attorney." *Id.* at 165. Petitioner ultimately accepted the plea deal after speaking with Ms. Lakeman.

The court then questioned Petitioner about his prior complaints concerning Ms. Lakeman:

> STATE: Uh — I guess for purposes of the *Nelson* hearing I — you're finding that Ms. Lakeman is competent as provided as —
>
> THE COURT: Well, I am taking this that he's — he's abandoning that at this point.
>
> STATE: Okay.
>
> MS. LAKEMAN: Mr. Hunt, can you address that with the Judge, please?
>
> PETITIONER: What am I doing now?
>
> THE COURT: You — you — you said that you wanted a new lawyer, basically, in your letter.
>
> PETITIONER: Right.
>
> THE COURT: Now, if — if we go forward the plea that carries with it, my understanding and everyone's understanding, that you're coming off that. You're willing to go forward with, Ms. Lakeman, in connection with the plea.
>
> PETITIONER: Absolutely.

*Id.* at 166–67 (cleaned up).

After orally working through the plea deal, the court questioned Petitioner further:

THE COURT: And, you're doing all of this — we've had a lot of conversation today and you've approached, The Court, with a lot of —

PETITIONER: Willfully doing this, Your Honor.

THE COURT: — different issues and everything. But you're entering this plea freely and voluntarily, correct?

PETITIONER: Absolutely. Yes, Sir.

THE COURT: You've had a chance to talk to your lawyer?

PETITIONER: Yes, Sir.

THE COURT: And, you're satisfied with the services of your lawyer and connection with entering — with this case and entering the plea?

PETITIONER: Yes, Sir.

*Id.* at 171–72 (cleaned up).

Given this, Petitioner cannot now claim that Ms. Lakeman was ineffective for continuing to represent him "after withdrawing as counsel." Ms. Lakeman never withdrew, and Petitioner ultimately expressed her satisfaction with her services. Ms. Lakeman, moreover, never stopped acting as Petitioner's advocate throughout the hearing—she even expressly referred to herself as "his advocate" after Petitioner complained about her services. *Id.* at 162.

Ground IV is procedurally defaulted. The Court cannot review it where Petitioner's underlying claim is meritless.

## V. Evidentiary Hearing and Certificate of Appealability

In light of the foregoing analysis, an evidentiary hearing in this matter is unnecessary. "A petitioner is entitled to an evidentiary hearing if he alleges facts that, if true, would entitle him to relief." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (internal quotations and citations omitted). Notwithstanding, "a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous[.]" *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (citation omitted). Here, Petitioner's claims are meritless or contradicted by the record. As a result, summary dismissal is appropriate. *See Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (finding that "a district court faced with a § 2255 motion may make an order for its summary dismissal [i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief").

Petitioner is similarly not entitled to a certificate of appealability ("COA"). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant[,]" and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the

merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle*, 279 F.3d at 935. Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.

(2) A certificate of appealability and leave to appeal *in forma pauperis* is **DENIED**.

(3) The Clerk is directed to enter judgment in favor of Respondent and close this case.

**DONE AND ORDERED** at Tampa, Florida, on July 24, 2023.

/s/ William F. Jung
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Petitioner, *pro se*